WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

United States of America,

         Plaintiff,

v.

Ismael Alfredo Velasquez,

         Defendant.

CR-12-02259-TUC-CKJ (MAA)

**REPORT AND RECOMMENDATION**

      The Amended Petition to Revoke Supervised Release (Doc. 280) was referred to Magistrate Judge Michael Ambri.  Doc. 264.  The Amended Petition alleges that Defendant Ismael Alfredo Velasquez committed new crimes, left the federal judicial district where he was authorized to reside without prior permission, and changed his residence without giving prior notification.  Doc. 280-1, p. 2.  An evidentiary hearing was held on July 8, 2025.  Doc. 281.  Defendant was present with counsel.  Doc. 281.  Government's Exhibits 1 and 2 were admitted into evidence without objection.  *Id*. (supervised release conditions).  Government's Exhibits 3 and 4 were admitted over defense objection.  *Id*. (California charging documents).  US Probation Officer Jill Abril testified for the government.  *Id*. Defendant Velasquez testified for himself.  *Id*.

      Upon consideration of the evidence, the Magistrate Judge recommends the District Court find the government <u>did not</u> establish Defendant violated Mandatory Condition #1 of his supervised release prohibiting him from committing a federal, state or local crime but <u>did</u> establish he violated Standard Condition #2 prohibiting him from leaving the judicial district where he resides without first getting permission from the court or the

probation officer and <u>did</u> violate Standard Condition #7 prohibiting him from changing his residence without prior notification.  Doc. 280-1, p. 2.

Factual Background

After a jury trial, Defendant was found guilty of "violating Title 21, U.S.C. §846 and 841(a)(1) & (b)(1)(A)(i), Conspiracy to Possess with Intent to Distribute Heroin, a Class A Felony offense, as charged in Count 1 of the Indictment; Title 21, U.S.C. §841(a)(1) and (b)(1)(A)(i), Possession with Intent to Distribute Heroin, a Class A Felony offense, as charged in Count 2 of the Indictment; Title 21, U.S.C. §952(a) and §960 (a)(1) & (b)(1)(A), and §963, Conspiracy to Import of [sic] Heroin, a Class A Felony offense, as charged in Count 3 of the Indictment; [and] Title 21, U.S.C. §952(a) and §960(a)(1) & (b)(1)(A), Importation of Heroin, a Class A Felony offense, as charged in Count 4 of the Indictment."  Judgment, Doc. 202, p. 1.

The Court sentenced Defendant to 120 months in custody with credit for time served and 60 months of supervised release.  Doc. 202.

Defendant's term of supervised release started May 17, 2023, and was to end January 25, 2029.  Doc. 280-1, p. 1.  On July 8, 2024, the probation officer filed an amended petition to revoke supervised release alleging that Defendant violated Mandatory Condition #1 and Standard Conditions #2 and #7.  Doc. 280-1, p. 2.  Mandatory Condition #1 states: "You must not commit another federal, state or local crime."  *Id*.  Standard Condition #2 states: "You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer."  *Id*.  Standard Condition #7 states: "If you plan to change where you live . . . you must notify the probation officer at least 10 days before the change."  *Id*.

Evidentiary Hearing

**Probation Officer Jill Abril**:  Abril testified that she has been a United States Probation Officer for 19 years.  Transcript, Doc. 287, p. 4.  She currently is Velasquez's probation officer.  Doc. 287, p. 5.  Abril laid the foundation for the government's Exhibit 1: Velasquez's judgment including Mandatory Condition 1 and Standard Conditions 2 and

7.  Doc. 287, p. 6.  Abril explained that the government's Exhibit 2 is a copy of the judgment with her signature and Velasquez's signature showing that she reviewed the conditions of supervision with him.  Doc. 287, p. 7.  Exhibits 1 and 2 were admitted into evidence.  Doc. 287, pp. 6-8.

In December of 2024, Abril attempted to contact Velasquez to arrange for her next home visit, but she was initially unable to make contact through phone or text.  Doc. 287, p. 9.  The leasing office reported that they were in the process of an eviction, but Velasquez later sent Abril a message stating that "he was just doing well, nothing to report."  Doc. 287, p. 10.  Abril tried to telephone Velasquez, "but the phone had no service."  Doc. 287, p. 10.  She then filed her initial petition to revoke on February 7, 2025.  *Id.*; Doc. 267.  She filed an amended petition on July 8, 2025.  Doc. 280.

In January of 2025, Abril spoke with Velasquez, who reported that he "was just released from custody."  Doc. 287, p. 10.  Abril obtained a Criminal Complaint from Merced, California, that charged Velasquez by name and date of birth with Criminal Threats and Assault.  Doc. 287, pp. 11-12; Exhibit 3.  The complaint was offered at the hearing as Government's Exhibit 3.  Doc. 287, pp. 11-12. Velasquez's counsel objected on the grounds of foundation, but the court overruled the objection.  Doc. 287, pp. 12-13.  Abril also obtained from Merced County pretrial a probable cause report from the Dos Palos Police Department, which was offered as Government's Exhibit 4.  Doc. 287, pp. 13-14.  The report includes the defendant's name and date of birth and supports the charges in the Criminal Complaint.  Doc. 287, p. 14;  Exhibit 4.  The report references the correct names of the defendant's mother and stepfather.  Doc. 287, pp. 14-15.

The government moved to admit Exhibit 4 into evidence, but the defendant objected "under the confrontation clause."  Doc. 287, p. 15.  The government argued that the Exhibit should be admitted because hearsay is admissible at a revocation hearing and the document bears "indicia of reliability" indicating that it is what it purports to be: a probable cause statement taken from the defendant's family members.  Doc. 287, p. 15.

The government's counsel explained that he did not try to bring the officer who

- 3 -

signed the complaint to court because "their information is fully put in the complaint and they're responding to a call after the facts that compromise the charges." Doc. 287, p. 18. The court admitted Exhibit 4 because hearsay is admissible in a revocation hearing and the document is what it proports to be: a probable cause statement taken by an officer related to an alleged domestic assault committed by the defendant. Doc. 287, pp. 18-19. Abril testified that Velasquez did not make further contact with her prior to his arrest in Tucson. Doc. 287, p. 19.

On cross-examination, Abril testified that she had not spoken to Velasquez's mother or father. Doc. 287, p. 20. She spoke to Velasquez's sister, but the sister was not present during the alleged assault. Doc. 287, pp. 20-21.

**Ismael Alfredo Velasquez**: The defendant testified that he did leave his place of residence but he was compelled to do so. Doc. 287, p. 25. He stated he was "raped" in his apartment. Doc. 287, p. 25. He said he was "abused" and "beat up" and "was going through a lot." Doc. 287, p. 25. He explained that he "asked probation if they could help me out," but he did not "get any help, so [he] left." Doc. 287, p. 25. He maintains that he left because he was scared and in fear for his life. Doc. 287, p. 25. He testified that he "left messages, voice messages, [and] text messages." Doc. 287, p. 25. He stated, "I'm not denying the allegations . . . [b]ut it's just I was scared." Doc. 287, p. 25. He did not deny leaving for California, but he explained that he became homeless and had no help. Doc. 287, p. 27.

On cross-examination, Velasquez stated that his mother's name is Maria Velasquez and his stepfather is Leopoldo. Doc. 287, pp. 27-28. They live in Dos Palos, California in Merced County. Doc. 287, p. 28.

Analysis

The Court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of release." *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008) (citing, among other things,18 U.S.C. § 3583(e)(3)). The preponderance standard is met where "the relevant fact is more likely true than not."

1  *United States v. Collins*, 109 F.3d 1413, 1420 (9th Cir. 1997).

2      At the evidentiary hearing, the government offered Exhibits 3 and 4.  Doc. 287, pp.

3  11-13, 13-19.  Exhibit 3 is a Criminal Complaint filed in the Merced County Superior

4  Court, CA, charging Defendant with "PC422: Criminal Threats – Felony" and

5  "PC245(a)(4): Assault by Means of Force Likely to Produce Great Bodily Injury – Felony."

6  Exhibit 3.  Exhibit 4 is a probable cause statement authored by Officer Brittany Ruiz, Dos

7  Palos Police Department.  Exhibit 4.  In that Exhibit, Ruiz states that she spoke to Maria

8  Velasquez, Defendant's mother.  Exhibit 4.  According to Ruiz, Maria stated that

9  Defendant "put his left arm around her throat and began choking her and said he was trying

10  to help her."  *Id*.  Maria further stated that she called her husband Leopoldo to come into

11  the kitchen, and Defendant let her go and "said that he would kill her and Leopoldo."  *Id*.

12  The government argues that this Exhibit establishes that Velazquez violated Condition #1

13  of his supervised release: that is, he committed another offense.  Doc. 287, pp. 28-29.

14      "The Federal Rules of Evidence do not strictly apply in supervised release

15  revocation hearings."  *United States v. Garcia*, 2024 WL 844389, at *4 (D. Ariz. Jan. 26,

16  2024)  (citing *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003); Fed. R.

17  Evid. 1101(d)(3)); report and recommendation adopted, 2024 WL 841016 (D. Ariz. Feb.

18  28, 2024).  "A court may therefore consider hearsay evidence, provided the court's ultimate

19  determination is based on 'credible evidence' and 'verified facts.'"  *Garcia* at *4 (citing

20  *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008)). "Although there is no absolute

21  right at a revocation hearing to confront testimonial witnesses under *Crawford v.*

22  *Washington*, 541 U.S. 36, 68-69 (2004), a defendant is entitled to 'a fair and meaningful

23  opportunity to impeach the evidence' offered to establish an alleged violation to assure that

24  any finding of a violation is based on verified facts and reliable information."  *Garcia* at

25  *4 (citing *United States v. Martin*, 984 F.2d 308, 310 (9th Cir. 1993)).  The court finds that

26  while Exhibit 3 and Exhibit 4 are what they purport to be – a Criminal Complaint filed in

27  Merced County Superior Court and a probable cause statement authored by Officer

28  Brittany Ruiz – they do not establish by a preponderance of the evidence that Velasquez

1   violated Mandatory Condition #1: "You shall not commit another federal, state, or local
2   crime during the term of supervision."  Doc. 287, p. 6.

3       The Court finds that Exhibit 4 records statements made by Velasquez's mother,
4   Maria, to Officer Ruiz.  The content of those statements, however, do not provide the
5   indicia of reliability sufficient to establish a violation of Condition #1 by a preponderance
6   of the evidence.

7       According to Ruiz, "Maria stated that she was in the kitchen washing dishes and her
8   son, Velasquez, was sitting at the kitchen table, Velasquez got up and walked to Maria and
9   put his left arm around her throat and began choking her and said he was trying to help
10  her."  Exhibit 4.  There is no explanation as to why Velasquez would start choking his
11  mother.  There is no indication that he was upset or that they were having an argument.
12  His purported statement that he was "trying to help her" makes no sense without context,
13  which has not been provided.  *Id*.

14      Maria stated that she "was in fear for her life," was choked "for approximately three
15  minutes," and "began to see stars."  Exhibit 4.  Ruiz, however, says nothing about Maria's
16  demeanor when she made her statements.  She does not state that Maria appeared fearful
17  or shaken.  There is no indication that Maria's statements might fall under the "excited
18  utterances" hearsay exception, which would be some evidence that her statements were
19  reliable.  *See* Fed.R.Evid. 803(2).

20      Ruiz did check "Maria's neck for injury" but she "did not locate any visible
21  injuries."  Exhibit 4.  Maria "declined medical attention."  *Id*.  While it is possible that
22  Maria was choked for three minutes without showing visible injuries, the fact that Ruiz
23  could see no evidence of choking does not lend credence to Maria's narrative.

24      Maria further stated that Velasquez threatened that he would kill her and her
25  husband, "Lepoldo."  Exhibit 4;  (spelled "Leopoldo" in transcript, Doc. 287, pp. 27-28)
26  Then, he "sat back down at the kitchen table."  Exhibit 4.  Maria did not explain why
27  Velasquez would make such a statement and then sit back down without taking any further
28  action.

Finally, the court notes that the document is titled Probable Cause Narrative. Exhibit 4.  Presumably it is what it purports to be, a narrative of "probable cause," which is a lower standard of proof than a "preponderance of the evidence."  *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006).  The court finds that the government has not proven that Velasquez violated Mandatory Condition #1 by a preponderance of the evidence.  Doc. 287, p. 6; *see, e.g., United States v. Garcia*, 2024 WL 844389, at *4 (D. Ariz. Jan. 26, 2024)  (The government failed to prove by a preponderance of the evidence that the defendant violated the terms of his supervised release where "the police report does not note: (1) who owned the car; (2) whether there were other people in the car; (3) whether the defendant had the key for the car; or (4) where the pill and drug paraphernalia were found in the car."), report and recommendation adopted, 2024 WL 841016 (D. Ariz. Feb. 28, 2024);  *but see, e.g., United States v. Orozco*, 2024 WL 418152, at *1, 4 (D. Ariz. Feb. 5, 2024)  (The statements made by the defendant's girlfriend that she was assaulted by the defendant bore "indicia of reliability" where they were supported by "photographs depicting redness and swelling on [her] face, shoulder, and arm" and she "initially presented as 'crying,' 'hysterical,' 'upset,' and 'breathing heavily' as if she were 'going to hyperventilate.'"), aff'd,  2025 WL 2028317 (9th Cir. July 21, 2025)).

The court does find based on the testimony of Probation Officer Abril and the defendant's admissions that Velasquez violated Standard Condition #2: "You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer" and  Standard Condition #7: "If you plan to change where you live . . . you must notify the probation officer at least 10 days before the change."  Doc. 287, pp. 6-7.

<u>Recommendation</u>

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local R. Crim. P. 57.6(d)(4), the Magistrate Judge RECOMMENDS that the District Court, after an independent review of the record, find that Defendant violated Standard Conditions #2 and #7 of his probation.  Doc. 280.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections with the District Court within fourteen (14) days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, they may be deemed waived.

The Local Rules provide for the filing of a response to an objection.  They do not permit the filing of a reply without leave of the District Court.

Dated this 18th day of August, 2025.

Honorable Michael A. Ambri
United States Magistrate Judge